UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KALA M. HODGKIN,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION & ORDER

18-CV-0703MWP

## PRELIMINARY STATEMENT

        Plaintiff Kala M. Hodgkin ("Hodgkin") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner, and this claim is remanded solely for the calculation and payment of benefits.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Procedural History**

Hodgkin protectively filed for SSI and DIB on May 21, 2012, alleging disability primarily due to Crohn's disease and depression. (Tr. 145, 149).[1] On November 7, 2012, the Social Security Administration (the "SSA") denied Hodgkin's claim for benefits, finding that she was not disabled. (Tr. 64-65). Hodgkin requested and was granted a hearing before Administrative Law Judge Stanley A. Moskal, Jr. ("ALJ Moskal"). (Tr. 80-81, 93-98). ALJ Moskal conducted a hearing on March 14, 2014. (Tr. 31-57). In a decision dated April 23, 2014, ALJ Moskal found that Hodgkin was not disabled and was not entitled to benefits. (Tr. 10-19). On June 24, 2015, the Appeals Council denied Hodgkin's request for review of the ALJ's decision. (Tr. 1-6).

Hodgkin commenced an action seeking review of the Commissioner's decision. (Tr. 579-607). On March 8, 2016, pursuant to a stipulation of the parties, United States District Judge Frank P. Geraci, Jr., vacated the Commissioner's decision and remanded the matter for further proceedings. (Tr. 608-13). Upon remand, the Appeals Council determined that the administrative record had not been adequately developed with respect to Hodgkin's Crohn's disease, particularly with respect to "the frequency of the claimant's need for restroom breaks." (Tr. 616). The Appeals Council directed that the ALJ assigned to the matter on remand obtain additional evidence regarding Hodgkin's Crohn's disease, including if available, a consultative examination and a medical source statement, reconsider her RFC in light of any additional

---

[1] The administrative transcript shall be referred to as "Tr. __."

evidence obtained, and conduct a new hearing and consult a vocational expert if warranted. (Tr. 617).

Upon remand, Administrative Law Judge Bryce Baird (the "ALJ") attempted to develop the record regarding Hodgkin's Crohn's disease in several respects. He accepted and considered additional evidence submitted to the record, including treatment records and a medical source statement from Hodgkin's treating gastroenterologist James Campion ("Campion"), MD. (Tr. 795-860, 872-92). Next, he ordered a consultative internal evaluation of Hodgkin, which was conducted by Michael Rosenberg ("Rosenberg"), MD, on November 29, 2017. (Tr. 893-903). Finally, the ALJ conducted an additional administrative hearing held on October 24, 2017, and requested and secured the assistance of a testifying vocational expert at that hearing. (Tr. 495-555).

In a decision dated March 23, 2018, the ALJ found that Hodgkin was not disabled and was not entitled to benefits. (Tr. 472-88). Hodgkin commenced this action on June 21, 2018, seeking review of the Commissioner's final decision. (Docket # 1).

### III. ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 472-88). At step one of the process, the ALJ found that Hodgkin had not engaged in substantial gainful activity since May 15, 2012, the application date. (*Id.*). At step two, the ALJ concluded that Hodgkin had the severe impairments of Crohn's disease and adjustment disorder. (*Id.*). At step three, the ALJ determined that Hodgkin did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (*Id.*). With respect to Hodgkin's mental limitations, the ALJ found that she

5

suffered from moderate limitations in interacting with others and concentrating, persisting or maintaining pace, and mild limitations in understanding, remembering, or applying information and adapting or managing oneself. (*Id.*). The ALJ concluded that Hodgkin had the RFC to perform light work involving occasional interactions with the public but no teamwork, and simple, routine tasks which can be learned after short demonstration or within thirty days. (*Id.*). Additionally, the ALJ concluded that Hodgkin could only perform positions requiring occasional kneeling, crouching, stooping, bending, or climbing ramps and stairs, but never requiring crawling, climbing ropes or ladders, or exposure to workplace hazards. (*Id.*). Finally, the ALJ determined that Hodgkin must be permitted three unscheduled bathroom breaks lasting ten minutes in duration during an eight-hour workday. (*Id.*). At steps four and five, the ALJ determined that Hodgkin could return to her past relevant work as a child monitor as it was actually performed and that jobs existed in the national economy that Hodgkin could also perform, including the positions of stock checker, housekeeping, and mail room clerk. (*Id.*). Accordingly, the ALJ found that Hodgkin was not disabled. (*Id.*).

## IV.     Hodgkin's Contentions

Hodgkin contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 8, 13). First, Hodgkin challenges the ALJ's RFC determination on the grounds that the ALJ relied upon his own lay opinion when determining that she would only require three unscheduled breaks during an eight-hour workday. (Docket ## 8-1 at 13-16; 13 at 1-5). Next, Hodgkin maintains that the ALJ improperly failed to give controlling weight to the opinion authored by Campion, her treating gastroenterologist. (Docket # 8-1 at 17-24). The Commissioner maintains that the ALJ

properly rejected Campion's opinion regarding the number of bathroom breaks Hodgkin would need during a workday, and that this determination is supported by substantial evidence in the record. (Docket # 12-1).

V. **Analysis**

I turn first to Hodgkin's contention that the ALJ's RFC assessment was flawed because the ALJ improperly rejected Campion's opinion that she would require eight unscheduled bathroom breaks during an eight-hour workday. (Docket ## 8-1 at 13-16; 13 at 1-5).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[2]). Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more

---

[2] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

7

detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

    (1)    the frequency of examination and length, nature, and extent of the treatment relationship,

    (2)    the amount of medical evidence supporting the opinion,

    (3)    the consistency of the opinion with the record as a whole,

    (4)    whether the opinion is from a specialist, and

    (5)    whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the

procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

In his decision, the ALJ acknowledged that Campion had a treating relationship with Hodgkin and was a specialist, but accorded his opinion only "some weight" because it was inconsistent with the record as a whole, including Campion's own treatment records demonstrating improvement with treatment and Hodgkin's own testimony concerning the frequency of her bowel movements during the workday. (Tr. 485). Specifically, the ALJ stated:

> Some weight is given to the September 2017 opinion of [Campion,] the claimant's gastroenterologist who opined the claimant would have reduced abilities in lifting, standing and walking as well as unscheduled restroom breaks up to 8 times per day for approximately 15-20 [minutes] and would be absent more than four days per month[.] . . . [T]he evidence as a whole, including his correlating and contemporaneous treatment records do not support such extreme limitations as opined, nor does the record as a whole provide a basis for his bathroom break regulations. For example, the claimant's reports and testimony show less bowel movements reported per day ([hearing testimony], 29F/1). Additionally, his treatment records also reflect her symptoms are well-controlled with medication compliance and infusion therapy (2F/10, 24F/10, 28F/12). As such, his opinion is given only some weight despite his specialty and treatment history with the claimant as the totality of the evidence does not support that the claimant is as limited as opined.

(*Id.*).

9

Having reviewed the ALJ's decision, the record, and Campion's opinion, I conclude that the grounds provided by the ALJ for rejecting Campion's bathroom break restrictions do not constitute "good reasons." As an initial matter, I disagree that Hodgkin's testimony and Campion's treatment notes are inconsistent with Campion's conclusion that she would need eight restroom breaks during the workday. (*Id.*). Although Hodgkin testified that she typically used the restroom approximately six times while her children were at school, she also testified that the frequency of her bathroom use varied drastically depending upon how recently she had received an infusion, her diet, and whether she was experiencing a "bad" day. (Tr. 539-43). Indeed, the record reflects that Hodgkin routinely complained of using the facilities more than five, and up to ten times per waking day, as well as needing to wake during the night to use the restroom. (Tr. 256, 296, 404, 407, 413, 416, 799, 803, 820, 826, 881).

Further, the record simply does not support the conclusion that Hodgkin's symptoms were "well-controlled with medication compliance and infusion therapy." (Tr. 485 (citing Tr. 250, 804, 883)).[3] To the contrary, treatment records demonstrate that despite starting infusion treatment, Hodgkin continued to experience up to ten bowel movements per day, including experiencing continued accidents and blood in her stool. (Tr. 799, 803, 881). To address this, Campion wanted to increase the frequency of her infusion treatments, but Hodgkin's insurance company denied this request approximately two months prior to the second administrative hearing. (Tr. 799, 885). Further, an endoscopy performed less than a month prior

---

[3] Both the ALJ and the Commissioner have cited to several pages of the administrative transcript to support their assertion that the record demonstrates improvement with treatment. (Tr. 485 (citing Tr. 250, 804, 883); Docket # 12-1 at 22-23 (citing Tr. 805, 814, 820, 846-47)). None of these record citations support the conclusion that Hodgkin's condition significantly improved with treatment. (Tr. 250 (treatment note from 2010 prior to deterioration in condition as a result of pregnancy), 803-05 (6-9 bowel movements per day despite treatment with prednisone and Entyvio infusions), 814 (reporting less bowel movements due to decreased food intake, combination of prednisone and pentasa not effective to manage symptoms), 820-21 (reporting 9-12 bowel movements per day with blood in stool), 846-47 (reporting fewer bowel movements but continuing to suffer from fecal frequency and abdominal pain), 881-83 (although laboratory results were improved Hodgkin continued to report accidents and several bowel movements per day, including three in the morning and again after eating)).

10

to the hearing demonstrated "evidence of severe Crohn colitis," a large amount of pseudopolyps, and a stricture in Hodgkin's right lower area as well as in her sigmoid colon. (Tr. 892). Indeed, Campion assessed that Hodgkin's condition was not yet under control. (Tr. 874).

In sum, I find that the ALJ's conclusion that the "evidence as a whole, including [Campion's] correlating and contemporaneous treatment records" was inconsistent with the bathroom break frequency assessed by Campion is not supported by the record. (Tr. 485). Other than Hodgkin's purported improvement with treatment, and her hearing testimony, both of which are discussed above, the ALJ did not identify anything in the treating notes that was inconsistent with Campion's assessment. Without identifying, let alone explaining, the alleged inconsistencies, the ALJ has failed to provide a justifiable basis for discounting the opinion. *See Marchetti v. Colvin*, 2014 WL 7359158, *13 (E.D.N.Y. 2014) ("[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on . . . conclusory assertions of inconsistency with the medical record") (collecting cases); *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594 at *2 ("this . . . conclusory statement about the treatment records fails to fulfill the heightened duty of explanation"); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's opinion was "inconsistent with the evidence and record as a whole" was "simply not the 'overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion'") (quoting *Velazquez v. Barnhart*, 2004 WL 367614, *10 (D. Conn. 2004)).

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'" *Butts*, 388 F.3d at 385 (quoting 42 U.S.C. § 405 (g)). "Remand is appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record,

11

further findings would . . . plainly help to assure the proper disposition of [a] claim." *McGregor v. Astrue*, 993 F. Supp. 2d 130, 145 (N.D.N.Y. 2012) (internal quotations omitted) (*adopting report and recommendation*). In contrast, where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," a remand for calculation of benefits, as opposed to further fact gathering, is appropriate. *See Butts*, 388 F.3d at 385-86 (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)); *see also Sublette v. Astrue*, 856 F. Supp. 2d 614, 619 (W.D.N.Y. 2012) (remanding for calculation of benefits where medical provider opinions, properly weighed, clearly justified finding of disability); *Salisbury v. Astrue*, 2008 WL 5110992 at *8-9 (remanding for calculation of benefits; "[t]hese opinions [properly credited], together with the [p]laintiff's testimony, provide substantial evidence to support a finding that the [p]laintiff is disabled within the meaning of the Social Security Act and that further evidentiary proceedings would serve no further purpose").

After reviewing the record, including the opinion of Campion, which is entitled to controlling weight, I conclude that substantial evidence supports a finding that Hodgkin is disabled, that no further development of the record would assist the determination, and that a remand for calculation of benefits is warranted. In reaching this conclusion, I find that the ALJ erred in his credibility determination and that his conclusion that Hodgkin requires only three unscheduled bathroom breaks during the workday is not supported by substantial evidence. Indeed, my independent review of the record establishes that the bathroom break limitations assessed by Campion are well-supported by, and consistent with, the evidence of record. If properly credited, this opinion, when considered in light of the vocational expert's testimony that six unscheduled bathroom breaks per day would preclude competitive employment, strongly supports the conclusion that Hodgkin's suffers from a substantial inability to remain on task for

approximately 85% of the workday, as required for competitive work, justifying a finding of disability. (Tr. 551-52).

A longitudinal review of the treatment records demonstrates that Hodgkin received routine ongoing treatment for Crohn's disease from Campion between 2013 and 2017.[4] (Tr. 399-420, 795-860). During that period, Hodgkin was treated with a combination of medications, including prednisone, which Campion repeatedly advised was not meant for long-term use. (Tr. 250, 799, 803, 806, 820, 829, 831, 833, 834, 837, 843). Attempts to wean Hodgkin from prednisone were not successful, primarily due to her status as either pregnant or nursing during the majority of this time period, precluding treatment with more effective or appropriate long-term medication options. (*Id.*). As a result, Hodgkin did not begin infusion therapy until September 2016, and although this therapy improved her laboratory results significantly, she continued to experience frequent bowel movements, accidents, and blood in her stool despite the ongoing infusion treatment. (Tr. 799, 803, 806-08, 881). Based upon these continued symptoms, Campion opined on September 29, 2017, that Hodgkin's condition was "not under control yet."[5] (Tr. 875). Moreover, the bathroom break limitation assessed by Campion is entirely consistent with Rosenberg's opinion – the only other medical opinion in the record relating to Hodgkin's Crohn's-related symptoms – that Hodgkin was unable to engage in work-related activities unless she was provided "close proximity to bathroom facilities." (Tr. 896).

---

[4] Hodgkin treated with Campion prior to 2013, but not consistently. (Tr. 241-50).

[5] It is entirely possible that over time a treatment regimen that better controlled Hodgkin's symptoms was identified and implemented. Under such circumstances, in the event that the frequency and unpredictability of Hodgkin's bowel movements were sufficiently reduced, a finding of disability would not be appropriate. Whether such events occurred is, of course, not before this Court on this record. For purposes of this determination, it is sufficient to conclude that at the time of the ALJ's decision the record did not support the conclusion that Hodgkin's condition had sufficiently improved with treatment to preclude a finding of disability.

Despite the persistence of Hodgkin's colitis-related symptoms throughout her treatment history with Campion, the ALJ concluded that the record does not support Hodgkin's claims of disability based, in part, upon her ability to engage in some daily activities – including caring for her personal hygiene and children, managing her household, and for a period of time providing childcare services to other families from her home – and her failure to comply consistently with her medication regimen. (Tr. 480-81). I disagree. A thorough review of Hodgkin's treatment history supports Campion's assessment of the severity of Hodgkin's impairments and her inability to perform work-related activities on a day-to-day basis in a competitive work setting.

As an initial matter, although Hodgkin's capacity to care for her children and other children is relevant to the disability question, the ALJ's decision suggests that he may have equated her ability to care for children with an ability to work. Yet, the ALJ apparently overlooked or ignored Hodgkin's testimony that she was only able to manage childcare responsibilities while in her house, with ready access to a bathroom and the ability to use the restroom at will. (Tr. 514-15). Further, Hodgkin testified that she relied upon her family to provide childcare during periods of intense gastrointestinal symptoms. (Tr. 508-09, 530).

Although, as noted by the ALJ, the treatment records suggest that Hodgkin experienced periods of noncompliance with appointments and recommended treatment, she explained that these periods primarily occurred when she relocated from the area where Campion's office was located. (Tr. 404, 513, 529, 884). Indeed, Hodgkin indicated that she ultimately moved back to the Jamestown-area in order to be in closer proximity to Campion's office, as well as to receive assistance from her grandmother. (Tr. 256, 510, 513, 529).

The record in this case is extensive and contains a comprehensive set of treatment notes documenting Hodgkin's frequent and ongoing gastrointestinal treatment over a period of four years. It includes an opinion from the health provider who treated her consistently during that period, as well as an opinion from an examining physician. Properly credited, the opinion from Hodgkin's treatment provider supports the conclusion that Hodgkin does not have the ability to perform the activities required to engage in competitive work. Under these circumstances, a remand for further administrative proceedings is not warranted because there are no inconsistencies or gaps in the record and further evidence does not need to be developed. *See Bradley v. Colvin*, 110 F. Supp. 3d 429, 447 (E.D.N.Y. 2015) (remanding for calculation of benefits where "the ALJ disregarded a well-developed record with little explanation, giving the [c]ourt no basis to conclude that remanding to obtain additional evidence would support the Commissioner's decision") (internal quotations omitted); *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 272-73 (E.D.N.Y. 2015) ("[b]ecause the record provides persuasive proof of plaintiff's disability, [and] proper application of the legal standards would not contradict the weight of this evidence in the record . . . , the proper course of action is to reverse the ALJ [d]ecision and remand the matter to the Commissioner for a calculation of disability benefits") (internal quotations omitted). Accordingly, remand for the calculation and payment of benefits is warranted.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Hodgkin's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED**. This matter is remanded to the Commissioner for calculation and payment of benefits.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                          MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
         March 26, 2020